The MEREDITH DEVELOPMENT COMPANY, a Corporation, and Howard Gale, Plaintiffs-Appellants,

v.

Richard A. BENNETT and Bruce Rosen, Defendants-Respondents.

No. 33391.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 15, 1969.

Application to Transfer Denied Nov. 10. 1969.

**520**

Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, for appellants.

Marvin Klamen, Clayton, for respondents.

CLEMENS, Commissioner.

This appeal concerns the division of losses resulting from the building and sale of houses by three persons in a series of joint ventures, each on the same terms. Two venturers were real estate developers, Richard A. Bennett and Bruce Rosen. The third venturer's identity was in issue. Bennett and Rosen contend the third joint venturer was Howard Gale. Gale denies

personal participation, contending the third venturer was plaintiff Meredith Development Company, a corporation of which Gale was president. The trial court found Gale, not his corporation, was the third venturer and was liable for one-third of the venture's losses, and owed Bennett and Rosen $2,991.41.

Two cases were filed and later consolidated. By the first, Meredith Development Company sued Bennett and Rosen for an accounting and distribution of *profits,* contending they owed the corporation some undetermined amount. In the second case Bennett and Rosen sued Gale individually for his one-third share of the venture's *losses.* On joint motion the trial court consolidated the cases and tried them without a jury. By trial time Bennett and Rosen had made full financial disclosure, so the corporation abandoned its prayer for accounting and sought judgment for $923.-80, contending that was its one-third share of the joint venture's profits.

Whether the joint venture made a profit or suffered a loss depends on whether interest paid on borrowed money was deductible from income as an expense. If so, there was a loss, and Bennett and Rosen contend Gale must pay his share. If interest paid was not an expense of the venture but was chargeable to Bennett and Rosen personally, then there was a profit, and Gale's corporation contends Bennett and Rosen must pay it its one-third share. The trial court found that interest paid on borrowed money was an expense of the venture and was deductible from income, thereby producing a net loss, for one-third of which Gale was liable.

Gale contends that even if he was the third venturer and there was a loss, he is still not liable for a share of the venture's losses. This, on the asserted ground that where one venturer contributes services and the other contributes only money and there is a loss, each venturer has lost his capital and the money contributor can-

not recover from the service contributor. The trial court denied this contention, finding that Bennett and Rosen were not merely to contribute money to the venture but were to contribute services by securing the necessary land, financing the venture, and performing other services. This finding destroyed the basis of Gale's contention that a loss was chargeable only to Bennett and Rosen.

■ The issues here concern the law of partnerships. A joint venture has the usual attributes of a partnership except duration and scope, generally but not necessarily being limited to one transaction. See Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109 [13–15], and Hobart-Lee Tie Co. v. Grodsky, 329 Mo. 706, 46 S.W.2d 859[2], where the court added: "The [joint venture] relation may be established without a specific formal agreement; it may be implied or proven by facts and circumstances, and an agreement to share losses is not necessary; it also may be implied."

Since the case was tried without a jury we review it on the law and the evidence, determine the weight of evidence while deferring to the trial court's opportunity to judge the witnesses' credibility, and affirm the judgment unless clearly erroneous. Civil Rule 73.01(d), V.A.M.R.; Hargas v. Tipsword, Mo., 335 S.W.2d 137[1–3].

We have two factual issues. First, the parties differ about the identity of the third venturer, Gale or his corporation. Second, they differ about their agreed contributions, particularly on whether Bennett and Rosen were to furnish their own money or were merely to procure financing for construction. On this fact hangs the issue of whether interest paid on the construction loans was an expense of the venture—as Bennett and Rosen contend—or an expense personal to Bennett and Rosen to meet their obligations to furnish the money—as Gale contends.

*Identity of Third Venturer.* In 1961 Rosen located three vacant lots at 4124, 4126 and 4128 North Taylor Avenue in St. Louis. He talked with Bennett about developing the two lots at 4124 and 4126 Taylor and they asked Gale to do the building. He agreed. Soon thereafter the three men agreed to develop the other lot, at 4128 Taylor, and shortly later to develop two lots at 8407 and 8411 Hawkesbury. They agreed that the second and third ventures were to be on the same terms as the first. Gale admittedly said nothing to Bennett or Rosen about his corporation, Meredith Development Company, being involved; in testifying about the initial agreement Gale repeatedly spoke of what "I" was to do. There is no evidence that when the three men agreed to the venture Bennett and Rosen even knew Gale's corporation existed.

The major part of the financing was met by Bennett and Rosen's negotiating· five construction loans, one for each lot. A savings and loan association set up separate funds from which it advanced money intermittently to pay construction costs. These payments were made by the loan association on vouchers signed by Gale as president of the Meredith Development Company. This began two months after the parties' agreement to the joint venture and there is no explanation why the corporate name was used.

■ Despite this participation by Gale's corporation, Bennett, Rosen and Gale dealt with each other as individuals. Aside from two checks naming the Meredith Development Company, all settlements, payments and correspondence between the parties were consistently in Gale's name, not the corporation's.

We find that the original contracting parties were Bennett, Rosen and Gale, individually; that Gale's acts of thereafter doing some joint-venture business in his corporation's name did not release him from personal responsibility to his joint venturers.

*Interest as Expense.* This factual issue relates to Gale's contention that interest paid for construction loans was Bennett and Rosen's personal expense, not the joint venture's expense, and therefore was not deductible from joint-venture income in determining profit or loss. The parties' oral agreement was informal and testimony about it meager. Gale testified: "They would put up the money and I the time to build the houses, and split the profit three ways." Bennett merely said Gale agreed to "participate as a builder, as a one-third partner." Rosen was somewhat more precise. He testified about the original conversations: "Mr. Gale would do the building for his share; Mr. Bennett and myself would do the financing on the sale, and we would put out the amount of money that was needed over and above any construction loan that was gotten as far as having cash out in the venture." He added that it was agreed he and Bennett "were to handle all book work, financing and sale of completed construction."

The precise issue here: Did Bennett and Rosen agree to furnish their own money·for use by the joint venture or merely agree "to do the financing"? If they agreed to furnish their own money, the use of that money was one of their contributions to the venture; if instead of using their own money they borrowed it, then the interest paid was their personal expense, not the joint venture's expense. On the other hand, if Bennett and Rosen agreed only to procure the money for joint-venture use, then their agreed contribution was their services in procuring the money, and the interest expense is the joint venture's obligation. The testimony about the parties' oral agreement is not positive, but the trial court accepted Bennett and Rosen's version and found that the parties agreed only that Bennett and Rosen were "to secure the financing." Thus, the interest paid was held to be a joint-venture expense, deductible from income to determine profit or loss.

In determining the parties' intent about interest being an expense of the venture or

an expense personal to Bennett and Rosen, we are aided by the way the parties interpreted the agreement by their conduct. Generally, Gale arranged for delivery of materials, arranged for subcontractors' work, "coordinated" the project, and did some of the labor himself "to cut down on the overhead." Gale paid construction costs by drawing vouchers against the construction loan funds held by the savings and loan association. For their part Bennett and Rosen advanced funds for the original land purchases, acquired the lots, negotiated the construction loans, advertised the houses for sale, traded one completed house for another, procured five purchasers, closed the sales, kept the books, and paid the bills incurred by these activities.

The five houses were sold between September of 1961 and December of 1963. As each house was sold Bennett prepared a detailed settlement statement for the venturers. Each statement showed interest paid on the construction loan as an expense item, reflected in the ultimate share of profit or loss of each venturer. On the first sale Gale was paid $506 for his one-third share of the profit. On the second sale Gale's share of the profit was $173.89, and at his request this was paid to his corporation. On the third sale Gale's share of the profits was $576.77 and this amount is admittedly due him, but as a setoff against his one-third share of the losses incurred in the fourth and fifth sales. The record is devoid of evidence that Gale ever objected to construction loan interest being charged as a joint-venture expense, and his acceptance of his share of profit on the first and second sales indicates his approval.

■ Where the terms of an agreement are unclear or disputed the parties' performance often sheds light on their original intent. Wilkinson v. Tarwater, Mo., 393 S.W.2d 538[7]. And great weight is given to acts of performance that are against a party's interest. Landau v. Laughren, Mo., 357 S.W.2d 74[2].

■ Considering the parties' testimony about their original agreement, and their conduct pursuant thereto, we find their agreement was that Bennett and Rosen were obligated to secure, but not furnish, funds for the venture; that interest paid on the construction loans was a proper expense item in determining the venture's profits and losses.

■ *Sharing Losses.* It is the general rule that absent express agreement to the contrary partners and joint venturers impliedly agree to share losses in the same proportion as profits. Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562[10]; Allison v. Dilsaver, Mo.App., 387 S.W.2d 206[10]; 30 Am.Jur., Joint Adventures, § 45; 40 Am.Jur., Partnership, § 350; § 358.180(1), V.A.M.S. Bennett and Rosen base their claim on this principle and the trial court followed it in rendering judgment against Gale.

■ Gale relies on Allison v. Dilsaver, supra, for an exception to the general rule. That case discusses but does not apply an exception to the rule. By obiter it says there are divergent views about the apportionment of losses where one partner contributes only services and the other only money. But here there was no such joint venture. Gale did agree only to contribute his services in supervising construction, but Bennett and Rosen did not agree only to contribute money. Their agreed contribution was to advance the amount of money needed over and above construction loans, to serve the joint venture by selecting and purchasing land, and to manage the joint venture by handling the book work, financing and house sales. Since Bennett and Rosen's contributions were, like Gale's, essentially those of rendering services, this case does not come within the purported exception. We follow the general rule and hold that the trial court properly found Gale liable to Bennett and Rosen for one-third of the venture's losses.

In summary, we find as the trial court did: that Gale, not Meredith Development

**524**

Company, was a party to the venture; that interest paid on the construction loans was an expense of the venture, properly deductible from the venture's income in determining profits and losses; and that Gale is liable for one-third of the venture's losses.

▉ We note, however, that the trial court rendered judgment for $2,991.41 not only against Gale but also against plaintiff Meredith Development Company. Bennett and Rosen sued only Gale; they sought no relief against the corporation. That part of the judgment was not responsive to the pleadings. Although the point is not preserved for review, we hold it was a plain error affecting substantial rights and consider it under Civil Rule 79.04, V.A.M.R.

The judgment is affirmed insofar as it dismisses Meredith Development Company's suit for accounting and other relief, and is affirmed insofar as it awards plaintiffs Bennett and Rosen $2,991.41 against defendant Howard Gale; but the judgment is reversed insofar as it imposes that award against the Meredith Development Company, a corporation. Costs are taxed against defendant Howard Gale.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed insofar as it dismisses the Meredith Development Company's suit for accounting and other relief, and is affirmed insofar as it awards plaintiffs Richard A. Bennett and Bruce Rosen $2,991.41 against defendant Howard Gale; but the judgment is reversed insofar as it imposes that award against the Meredith Development Company, a corporation. Costs are taxed against defendant Howard Gale.

BRADY, Acting P. J., and BRUCE NORMILE, Special Judge, concur.