**CITY OF BEVERLY HILLS,**
Plaintiff/Respondent,

v.

**VILLAGE OF VELDA VILLAGE
HILLS, Defendant/Appellant.**

No. 68343.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 18, 1996.

Madeline F. Franklin, St. Louis, for appellant.

Richard C. Bresnahan, Clayton, for respondent.

AHRENS, Judge.

In this breach of contract case, defendant Village of Velda Village Hills appeals the judgment in favor of plaintiff City of Beverly Hills. Defendant, through its governing body, the Velda Village Hills Board of Trustees, contends the trial court made four errors during trial: (1) the court admitted extrinsic evidence for the purpose of interpreting an unambiguous contract term; (2) the court failed to adopt the term's usual and ordinary meaning as defined in the dictionary; (3) the court's finding that defendant breached the contract was against the weight of the evidence; and (4) the court failed to construe any contract ambiguities against plaintiff, who drafted the contract. We affirm.

Review of this judge-tried case is governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. We give due regard to the trial court's opportunity to have judged the credibility of the witnesses. Rule 73.01(c)(2). Further, we view the evidence and the concomitant inferences in a manner favorable to the prevailing party while disregarding all contradictory evidence. *American States Insurance Co. v. P.R. Developers, Inc.*, 876 S.W.2d 12, 14 (Mo.App. 1994).

The evidence adduced at trial, when viewed in the light most favorable to plaintiff, reveals the following: The parties entered into a contract on May 4, 1992, which was drafted by plaintiff's chief of police, Joe Col-

lins. According to the contract, plaintiff would provide police services to defendant for a two-year period beginning on May 15, 1992, in exchange for a monthly fee. The contract contained a cancellation clause which permitted either party to terminate the agreement with "sixty days notice and cause shown". The phrase "cause shown" was undefined. Collins testified that the phrase was included specifically for the purpose of addressing defendant's concerns regarding plaintiff's performance. He stated that defendant wanted to be able to void the contract should plaintiff negligently perform its duties and obligations. Two members of defendant's Board of Trustees disputed Collins' testimony. Isaiah Johnson testified that the definition of "cause shown" was never discussed by the parties. However, his understanding was that it gave defendant the right to cancel the contract for any just reason. Earlene Luster ("Luster"), Chairman of the Board of Trustees, also testified that the parties did not discuss the definition of "cause shown".

On January 26, 1993, defendant notified plaintiff of its intention to exercise the cancellation clause. Notice was made via a letter which stated defendant had decided to obtain police services from the St. Louis County Police Department ("the County") instead of from plaintiff "because we feel that the County, with its wide variety of specialized services, can better meet the needs of our citizens." According to Luster, this letter did not communicate a belief that plaintiff was providing poor service. Later that day, Luster met with Collins to further explain the reasons for cancellation. According to admissions made pursuant to Rule 59.01, Luster told Collins at the meeting that defendant wanted to use the County police because the services provided were less costly. Furthermore, she stated cancellation was not due to any poor performance by plaintiff.

Plaintiff brought the instant suit seeking monetary damages. After trial, the court impliedly found that the term "cause" was unambiguous and that defendant, in order to cancel the contract, had to "show" [1]

1. While there is a dispute as to the meaning of the term "cause", neither the parties or the trial

that plaintiff had committed nonfeasance or malfeasance. The court found that defendant failed to meet this requirement. Therefore, the attempted cancellation was without legal effect. Plaintiff was awarded damages of approximately $42,000, the amount due on the remainder of the contract.

■ In its second point relied on [2], defendant contends the trial court erroneously found that "the term cause, in it's (sic) usual understanding, pertains to the performance of duties or obligations imposed upon a party." Defendant asserts that the court should have utilized the dictionary definition of "cause". We disagree.

■ Defendant, citing *Webster's Third New World Dictionary* 78 (1993), suggests that we define "cause" as "anything bringing about an effect or result; a reason or motive for some action, feeling, etc." Plaintiff, on the other hand, urges us to adopt the trial court's performance related definition of "cause". Thus, the parties each ascribe a different meaning to the contract term "cause". However, the parties' dispute over the term's meaning does not make the term ambiguous. *Phipps v. School District of Kansas City,* 645 S.W.2d 91, 100 (Mo.App. 1982).

> Whether or not language is ambiguous is a question of law for the trial court. In determining whether the trial court has erred as a matter of law in interpreting the contract as unambiguous, the appellate court reviews the [contract] itself to determine if any ambiguity exists. The language in question is ambiguous if it is "fairly susceptible of two interpretations." (citations omitted)

*Schuster v. Shelter Mutual Insurance Co.,* 857 S.W.2d 381, 383 (Mo.App.1993).

■ After thoroughly reviewing the parties' service contract, we hold that the term "cause" is unambiguous here; it is fairly susceptible to only one meaning. Our role is to determine the meaning to be enforced by what the words in context show the parties meant by the terms of the agreement, not by what the parties now say was intended. *Phipps,* 645 S.W.2d at 100. We agree with the trial court that, in the instant case, "cause" expresses a performance based standard for termination. *Compare Roach v. Consolidated Forwarding Co.,* 665 S.W.2d 675, 680 (Mo.App.1984); *Superior Gearbox Co. v. Edwards,* 869 S.W.2d 239, 244 (Mo. App.1993). In the parties' service contract, "cause shown" mandates, that, at a minimum, defendant communicate dissatisfaction with plaintiff's performance of its duties and obligations prior to or simultaneous with defendant's notice of termination. We realize that the trial court required defendant to communicate more than mere dissatisfaction with plaintiff's poor performance. Because we later find that defendant did not even communicate plaintiff performed poorly, we need not narrow our holding, as the trial court did, by requiring defendant to establish that plaintiff's performance rose to the level of nonfeasance or malfeasance in order for defendant to "show cause". Point denied.

In its third point, defendant challenges the trial court's finding that defendant failed to "show cause". Defendant contends the court's finding was against the weight of the evidence arguing that the testimony of Luster and Johnson established valid reasons and motives for terminating the contract. We disagree.

Defendant's contention is based on the assumption, which we have already contradicted, that "cause" is not a performance related term. Nowhere in its briefs and at no time during trial did defendant contend that plaintiff had acted with nonfeasance, malfeasance or even poorly performed its contractual

---

court attempted to give meaning to the term "show" or "shown". We hold that in the context of the instant contract, "show" means: to set forth in a statement, account or description; make evident or clear; declare. See *Webster's Third New International Dictionary* 2105 (1966).

**2.** All four of defendant's points relied on are sparse. The points barely satisfy the requirements of Rule 84.04(d). More informative points would help the court avoid an improper role as advocate for either side and enable the opposition to respond with robust advocacy to the precise issues being reviewed. See *Rouse Co. of Missouri v. Justin's, Inc.,* 883 S.W.2d 525, 529 (Mo.App.1994). We choose to address these points out of order to increase efficiency and comprehension.

duties and obligations. In fact, by failing to respond to plaintiff's request for admissions, defendant admitted that it "did not want to terminate the agreement due to any poor performance on the part of any [of plaintiff's] police officers." *See* Rule 59.01.

 Any matter admitted under Rule 59.01 is conclusively established unless the court on motion has permitted withdrawal or amendment of the admission. *U.S. Clip Corp. v. McThal, Inc.*, 729 S.W.2d 658, 660 (Mo.App.1987). No such motion was made. Therefore, plaintiff did not poorly perform its obligations and duties and defendant failed to communicate dissatisfaction with plaintiff's performance. The trial court did not err in finding that defendant failed to "show cause" as contractually required. Point denied.

 In its first point, defendant argues that the trial court erroneously ruled testimony admissible regarding the meaning of the term "cause". While the court may have erroneously allowed extrinsic evidence to interpret an unambiguous term, such evidence was harmless. Here, "cause" was properly defined as a matter of law and defendant made an admission that no "cause" was "shown". Point denied.

 In its fourth point, defendant asserts that the term "cause" should be interpreted favorably to defendant because plaintiff drafted the contract. The contra proferentum principle of contract construction, which defendant is urging we utilize, can only be applied to give meaning to an ambiguous term. *Phipps*, 645 S.W.2d at 102. As we have already held, "cause" is unambiguous in the parties' service contract. Point denied.

Judgment affirmed.

CRANE, C.J., and LOWENSTEIN, Special Judge, concur.